IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

| | |
|---|---|
| BILLY G. SCHINDEWOLF, *et al.* | CASE NO. 5:10-CV-00145-RS-CJK |
| Plaintiffs, | JUDGE RICHARD SMOAK |
| vs. | MAGISTRATE JUDGE CHARLES J. KAHN, JR. |
| SEYMOUR CONSTRUCTION, INC., *et al.* | **PLAINTIFFS' POST-TRIAL BRIEF** |
| Defendants. | |

**I.    INTRODUCTION**

Based upon the evidence and final argument presented at trial, Plaintiffs pray for an award of compensatory and punitive damages, as well as an award of interest, attorneys fees and costs. This brief is intended to elaborate upon some of the reasoning for this prayer.

**II.    PLAINTIFFS SHOULD PREVAIL ON THEIR FRAUD CLAIM AGAINST EACH OF THE DEFENDANTS**

Defendants' fraudulent misrepresentations induced Plaintiffs to provide Defendants with $500,000, purportedly to develop the Plaintiffs' property in Panama City Beach, Florida. While Defendants' represented that the $500,000 would be used for "soft costs" in order to get the project up and running as quickly as possible, it was established at trial that such statements were <u>false when made</u> and that Defendants' never had any intention to follow through with their promises. Public policy prohibits one from purposely using false information to induce another into a transaction such that profit is made from such wrongdoing. *See Gilchrist Timber Co. v.*

*ITT Rayonier, Inc.*, 696 So. 2d 334, 336-37 (Fla. 1997). Such policy considerations should apply here.

In order to recover for fraud, Plaintiffs must prove by the greater weight of the evidence that: (1) a false statement concerning a material fact was made; (2) the representor knew that the statement was false; (3) the intention of the statement was to induce another to act on it; and (4) consequent injury occurred as a result of the party acting in reliance on the statement. *See Butler v. Yusem*, 44 So. 3d 102, 105 (Fla. 2010) (justifiable reliance is not required); *Wadlington v. Continental Medical Services, Inc.*, 907 So. 2d 631, 632 (Fla. 4th DCA 2005); *Taylor Woodrow Homes Florida, Inc. v. 4/46-A Corporation*, 850 So. 2d 536, 542 (Fla. 5th DCA 2003). Plaintiffs' have met their burden.

Defendants made false statements with regard to the purpose of the $500,000. Defendant Seymour represented to Plaintiffs that he had "already signed up for $500,000 in soft costs," that he "had already written checks [to cover part of the soft costs] and will write more" within the week. Defendant Seymour told the Plaintiffs that he "need[ed] the money now" so that he could start developing Plaintiffs' property. These statements constitute fraud.

First, the false statements made were material in that Plaintiffs would not have handed over half a million dollars but for Defendants representations that they would use the money to develop Plaintiffs' property. *See Ribak v. Centex Real Estate Corporation*, 702 So. 2d 1316, 1317 (Fla. 4th DCA 1998) (holding that, for purposes of fraud, a fact is material if, but for the misrepresentation, the aggrieved party would not have entered into the contract). Second, the testimony at trial established that Defendants knew these statements were false at the time they were made. The evidence showed that instead of using the $500,000 to begin work on Plaintiffs' property as stated, Defendant Seymour intended, and subsequently used, the funds to pay himself

2

and the debts of his other companies.  Third, it is clear that Defendants made such statements to induce Plaintiffs to give them $500,000 upfront.  And finally, as a result of Plaintiffs acting in reliance on Defendants' false statements, Plaintiffs suffered the loss of their investment.

In addition, it is a general rule that a false statement of fact, to be a ground for fraud, must be of a past or existing fact, such as the ones outlined above, and cannot be a promise to do something in the future.  *See Wadlington*, 907 So. 2d at 632.  However, there is an exception to this general rule.  "Where the promise to perform a material matter in the future is made without any intention of performing or made with the positive intention not to perform" a cause of action for fraud may proceed.  *Id.* (citing *Vance v. Indian Hammock Hunt & Riding Club, Ltd.*, 403 So. 2d 1367, 1372 (Fla. 4th DCA 1981)).  Defendants false statements promising Plaintiffs that the project "will get up and running quickly" and "will break ground in December" qualifies under the exception and are a basis for fraud in this action.  Defendants did not ever intend to "get up and running" or to "break ground."

This second set of statements was material because, but for the Defendants false representations, Plaintiffs would not have entered into the MOI or given Defendants $500,000.  It was established at trial that developing their property as soon as possible was important to the Plaintiffs.  The evidence at trial demonstrated that Defendants never had any intention to perform the acts promised.  Defendants never intended to get the project going quickly and, consequently, knew they would not be able to break ground by December.  Defendants made these statements solely in order to induce Plaintiffs to provide Defendants with $500,000.

At trial, Defendants argued that Plaintiffs should be limited to a remedy for breach of contract based solely upon Defendants' failure to perform under the MOI, thereby disallowing a remedy based on Plaintiffs' claim of fraud.  However, the law in Florida is well settled that a

3

party may not contractually thwart liability for its own fraud. *See Burton v. Linotype Company*, 556 So. 2d 1126, 1127 (Fla. 3d DCA 1990). Fraud is an intentional tort for which compensatory and punitive damages may be recovered. *Id.* at 1128. Plaintiffs have properly pled fraud, and the greater weight of the evidence at trial proved fraud. Thus, Plaintiffs are entitled to recover damages as a result of Defendants' fraudulent conduct.

### III. PLAINTIFFS SHOULD RECOVER NOT ONLY AGAINST SEYMOUR CONSTRUCTION, INC. BUT ALSO AGAINST SCOTT SEYMOUR INDIVIDUALLY

#### A. Defendant Seymour Required His Corporation to Commit Fraud

The evidence at trial was that Scott Seymour was the sole (or at least the primary) officer of Seymour Construction, Inc. He made all decisions, and he certainly made all decisions pertaining to dealings with the Schindewolfs. Any fraud caused by the company occurred because Scott Seymour, individually, required his company, through his efforts, to commit that fraud.

As stated in Plaintiffs' Trial Brief, Florida law is clear that an officer, director or agent of a corporation is directly liable for torts in which he personally participates "whether or not his actions are by authority of the corporation or in the furtherance of the corporate business…[and] regardless of whether liability attaches to the corporation for the tort." *Longleaf Mitigation Development Company LLC v. Florida Mitigation Providers, LLC*, 519 F. Supp. 2d 1233 (Middle Dist. Fla. 2007), *quoting* from *Special Purpose Accounts Receivable Co-Op v. Prime One Capital Company, LLC*, 125 F. Supp. 2d 1093, 1104-05 (So. Dist. Fla. 2000). For example, in *Baron v. Osman*, 39 So. 2d 449 (Fla. Dist. Ct. App. 5th Dist. 2010), it was held that the founder of a corporate charter bus business could be held liable individually should the trial court find actual wrongdoing in the form of fraud, self-dealing or unjust enrichment on the part of the founder of the corporation.

4

The fraud as described in the section immediately above consisted entirely of statements and actions on the part of Scott Seymour, and of no one else. The fraud would not have and could not have happened in the absence of Mr. Seymour. He should not be permitted to commit blatant fraud, and then stand behind the fiction of his corporation in order ostensibly to avoid liability for his fraudulent conduct.

### B. Piercing the Corporate Veil

In addition, Scott Seymour should be personally responsible for his conduct as directed toward the Plaintiffs given the manner in which he dominated and controlled the corporation to an extent that he was an alter ego of Seymour Construction, Inc.

In *Gasparini v. Pordomingo*, 972 So. 2d 1053, 1055 (Fla. 3d DCA 2008), it was held that three factors must be proven in order to pierce the corporate veil: (1) the shareholder dominated and controlled the corporation to such an extent that the corporation's independent existence was, in fact, nonexistent and the shareholders were in fact alter egos of the corporation; (2) the corporate forum must have been used fraudulently or for an improper purpose; and (3) the fraudulent or improper use of the corporate forum caused injury to claimant.

The overwhelming weight of authority in Florida is to the effect that courts will look through the screen of a corporate entity to the individuals who compose it in cases in which the corporation was a mere device or sham to accomplish some ulterior purpose, or is a mere instrumentality or agent of another corporation or individual owning all or most of its stock, or where the purpose is to evade some statute or to accomplish some fraud or illegal purpose. *Dania Jai-Alai Palace, Inc. v. Sykes*, 450 So. 2d 1114, 1117 (Fla. 1984) (quoting *Mayer v. Eastwood-Smith & Co.*, 122 Fla. 34, 42-43 (Fla. 1935)).

The *Dania Jai-Alai Palace* case held that, while it is proper to use the fiction of a corporation in order to separate the entity from its shareholders, the fiction would be ignored where stockholders enter into a transaction in their individual interests and utilize the corporate name merely to mislead creditors or perpetrate a fraud. In *Kanov v. Bitz, M.D.*, 660 So. 2d 1165, 1166 (Fla. 3d DCA 1995), it was held that the critical issue in determining whether a corporate veil will be pierced is whether the corporate entity was organized or operated for improper or fraudulent purposes. Here, it is clear that Mr. Seymour used his corporation solely to perpetrate this fraud. Indeed, Mr. Seymour testified that he closed down the corporation in 2010 – which was within months of this lawsuit having been filed.

Mr. Seymour admitted at trial that he acquired the $500,000 solely to utilize as soft costs in advancing The View project, but that, instead, he utilized $450,000 of that sum to pay his employees over a one-year period of time. He, himself, caused this diversion of funds away from the purpose for which the funds were intended to be utilized. Mr. Seymour, himself, committed the fraud. Mr. Seymour should not be permitted to stand behind the fiction and veil of a corporation he used to defraud the Plaintiffs soon before shutting down the corporation in an attempt to avoid any liability to the Plaintiffs.

### III. AN AWARD OF PUNITIVE DAMAGES SHOULD BE RENDERED AGAINST THE DEFENDANTS

Whether an award of punitive damages should be made as against Defendants in this case is solely within the discretion of this Court. There obviously is no requirement to make such an award. Plaintiffs contend, however, that such an award is highly justified in this case.

Florida statutory law provides for an award of punitive damages in appropriate circumstances. Florida Statute Section 768.72 provides in pertinent part as follows in this regard:

6

> (1) In any civil action, no claim for punitive damages shall be permitted unless there is a reasonable showing by evidence in the record or proffered by a claimant which would provide a reasonable basis for recovery of such damages….
>
> (2) A defendant may be held liable for punitive damages only if the trier of fact, based on clear and convincing evidence, finds that the defendant was personally guilty of intentional misconduct or gross negligence. As used in this section, the term:
>
>> (a) "Intentional misconduct" means that the defendant had actual knowledge of the wrongfulness of the conduct and the high probability that injury or damage to the claimant would result and, despite that knowledge, intentionally pursued that course of conduct, resulting in injury or damage.
>>
>> (b) "Gross negligence" means that the defendant's conduct was so reckless or wanting in care that it constituted a conscious disregard or indifference to the life, safety, or rights of persons exposed to such conduct.

As to liability imposed upon the employer (in this case, Seymour Construction, Inc.), punitive damages may be imposed for the conduct of the employee if that conduct meets the criteria as set forth immediately above and "(a) the employer…actively and knowingly participated in such conduct; (b) the officers, directors or managers of the employer…knowingly condoned, ratified, or consented to such conduct; or (c) the employer…engaged in conduct that constituted gross negligence and that contributed to the loss, damages, or injuries suffered by the Plaintiff." F.S. 768.72(3). While only one of these elements must be met in order to establish liability of the employer for punitive damages, Plaintiffs provided substantial evidence as to all three.

Plaintiffs contend they put on very substantial evidence as to Defendants' intentional misconduct, as well as their gross negligence. Seymour intentionally deceived the Schindewolfs into providing him with $500,000 he at no time believed he would use on The View project. (He provided $50,000 to Bayne Collins solely as a ruse in order to keep Plaintiffs at bay.) He at all times intended to use that money to pay his employees to perform work on other, unrelated

7

projects. He in no fashion separated out or established a separate account for the monies provided to him by the Schindewolfs. Once the money was gone, but after he was sued by the Schindewolfs, he shut the company down in order to avoid his obligation to them. This and other evidence of record more than establishes the clear and convincing evidence standard required in order to support an award of punitive damages.

As to the amount of punitive damages, while entitlement to punitive damages must be proven by clear and convincing evidence, only a "greater weight of the evidence" burden of proof applies as to a determination of the <u>amount</u> of damages. F.S. Section 768.725. Florida law provides that an award of punitive damages may not exceed the greater of: (1) three times the amount of compensatory damages…; or (2) the sum of $500,000. F.S. Section 768.73(1). As Plaintiffs have requested a compensatory damage award of $450,000 (plus interest at the statutory rate), and as three times that amount is $1,350,000, the statute appears clear (absent reference to other sections of the statute not believed to be relevant for purposes of the current case), that this Court may not award damages exceeding $1,350,000.

Plaintiffs rely upon the sound discretion of this Court, of course, not only to determine whether punitive damages are appropriate, but what the amount of punitive damages should be in accord with F.S. Section 768.73. If punitive damages are awarded, though, Plaintiffs request an award, also, of attorneys fees in accordance with F.S. Section 768.73(3). Finally in this regard, Plaintiffs request that any punitive damages award and/or award of attorneys fees be adjudged against both Defendants, jointly and severally.

It is to be noted that punitive damages may be awarded not just on the basis of Plaintiffs' fraud claim, but may also be awarded based upon Plaintiffs' claim for conversion – as long as all of the elements of F.S. Sections 768.72 and 768.73 are met. The outright theft by Defendants of

8

monies from Plaintiffs certainly justifies an award of punitive damages even if this Court were for some reason to find fraud was not proven. For further guidance as to when punitive damages are properly awarded, see *Wayne Frier Home Center of Pensacola, Inc. v. Cadlerock Joint Venture, LP*, 16 So. 3d 1006, 1008 (Fla. 1st DCA 2009).

## IV. CONCLUSION

Plaintiffs were able to prove at trial that Defendant Seymour has engaged in a pattern of deceptive and fraudulent conduct as toward Plaintiffs for nearly four years. Not only did he fail to provide even one iota of tangible evidence or testimonial proof from other witnesses, but he lied repeatedly to this Court – and was caught doing so. His unconscionable conduct was exacerbated by (1) asking the Ohio Federal Court to move the case to Panama City so that he might call witnesses in Northwest Florida, and then failing to call even one such witness; and (2) requiring Plaintiffs to move this Court for an order compelling production of evidence (or for that matter, compelling Defendants to comply even with their initial disclosure obligations) during discovery. It might be noted that Defendants failed to comply with nearly every deadline established by this Court (for example, Defendants' Proposed Findings of Fact and Conclusions of Law were filed six days late), and they failed even to appear at the commencement of trial on time. Defendants throughout have shown disdain not only toward these Plaintiffs, but also toward the Court and its processes.

For all of these reasons, Plaintiffs pray for an award of compensatory damages in the amount of $450,000, plus interest, and also for an award of punitive damages in an amount to be determined by the Court, plus attorneys fees. In the event attorneys fees are awarded, Plaintiffs request the opportunity to provide evidence as to the reasonable and necessary fees incurred by Plaintiffs in regard to this case.

Respectfully submitted,

*/s/ Ronald S. Kopp*
Ronald S. Kopp (Fla. Bar #0004950)
rkopp@ralaw.com
Roetzel & Andress, LPA
222 South Main Street
Akron, Ohio 44308
Telephone: 330.376.2700
Facsimile: 330.376.4577

Of Counsel:

Paul W. Lombardi (Ohio Bar #0079179)
plombardi@ralaw.com
Roetzel & Andress, LPA
222 South Main Street
Akron, Ohio 44308
Telephone: 330.376.2700
Facsimile: 330.376.4577

Clayton W. Crevasse (Fla. Bar No. 0309621)
ccrevasse@ralaw.com
Roetzel & Andress, LPA
2320 First Street, Suite 1000
Fort Myers Florida 33901
Phone: (239) 338-4208
Fax: (239) 337-0970

Attorneys for Plaintiffs

## CERTIFICATE OF SERVICE

I hereby certify that on this 29th day of April, 2011, the foregoing Plaintiffs' Post-Trial Brief was filed electronically. Notice of this filing was sent to counsel of record through the Court's electronic filing system. Access to this document also can be obtained through the Court's electronic system.

*/s/ Ronald S. Kopp*
Ronald S. Kopp

1744148 v_01 \ 121380.0002